# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAIMIE E. STRASSER,

   Plaintiff,

-vs-                                                **Case No.** ▉

DR. CHARLES LARSON, NURSE RADOVICH,

JULIE LUDWIG, WHITTON CANDENCE,

WRC HSU MANAGER JOHN DOE, WRC PHYSICIAN DR. LORIA,

H. UTTER, DR. LAVOIE, ACP LAURIE J. WACHNOLZ,

  sued in their individual capacities,

   Defendants.

# COMPLAINT UNDER 42 USC @ 1983

### I. JURISDICTION

1. Plaintiff brings this lawsuit pursuant to 42 USC @ 1983. This Court has jurisdiction under 28 USC @ 1331 & 1343.

### II. VENUE

2. The Eastern District of Wisconsin is an appropriate venue under 28 USC @ 1391(b)(2) because after the alleged initial 8th Amendment violations occurred at Fox Lake Correctional Institution in-between November 1, 2019, and Plaintiff's transfer on December 16, 2019, to Wisconsin Resource Center(WRC), a substantial part of the events giving rise to this Complaint occurred at the Green Bay Correctional Institution(GBCI) in-between June 2021 until September 15, 2022.

### III. PARTIES

3. Plaintiff Jaimie E. Strasser was incarcerated, relevant to this Complaint, at the Fox Lake Correctional Institution(FLCI) before his transfer to WRC on December 16, 2019. Plaintiff was transferred to GBCI on June 24, 2021, and remained there until his transfer back to WRC, ~~where he is currently confined.~~

4. Defendant Dr. Charles Larson was at all times relevant to this Complaint employed as a doctor/Physician at FLCI. Larson was responsible for the physical health of inmates via properly diagnosing medical conditions, creating and/or following healthcare treatment or medication plans given by other physicians. Larson is being sued in his individual & official capacities.

5. Whitton Candence & Julie Ludwig were at all times in this Complaint employed as the Health Services Managers at FLCI, who were responsible for ensuring that all physicians & nurses followed: policy & procedures; referred inmates them to Doctor Larson or other physicians if necessary; ordered medications that a third party physician may have requested for inmates. Also, Ludwig & Candence was responsible for ensuring that all physicians & nurses at FLCI screened, tested, and properly diagnosed inmates' their serious medical condition. Ludwig & Candence are being sued in their individual & official capacities.

6. Defendant Radovich was at all times relevant to this Complaint employed as a health Services Staff at FLCI and responsible for ordering medications that a third party physician may have requested. Radovich is being sued in her individual & official capacities.

7. Defendant John Doe Health Services Manager was at all times relevant to this Complaint employed at the Wisconsin Resource Center(WRC). John Doe was responsible for: ensuring all physicians & nurses followed policy & procedures; referring inmates to the appropriate off-site specialist/physicians if necessary; ordering medications that an off-site physician may have requested for inmates; and reviewing off-site physicians recommended treatment plans and ensuring nurses & doctors followed such a plan when Also, John Doe is responsible for ensuring that all physicians & nurses at WRC screened, tested, and treated an inmates' serious medical condition. John Doe is being sued in her individual & official capacities.

8. Dr. Loria was at all times relevant to this Compliant employed at the WRC as a physician who was responsible for the physical health of inmates via properly diagnosing medical conditions, creating and/or following healthcare treatment or medication plans given by other physicians. Loria is being sued in his/her individual & official capacities.

9. Upon information & belief, Defendant Dr. Lavoie was at all times in this Complaint employed in the Dept. of Corrections' Bureau of Health Services unit in Madison as a doctor/physician who worked with Defendants Utter & Wachholz to ensure that medical treatment plans(e.g. ordering medications) of a third party physician were followed. He is being sued in hs individual & official capacities.

10. Defendant Laurie J. Wachnolz, was at all times relevant to this complaint a Nurse Practitioner at GBCI and responsible for adequately screening, testing, & when necessary, making referrals to qualified doctors/physciains and/or off-site specialists to treat an inmate's'

medical problems.

11. H. Utter was at all times in this Complaint employed at GBCI as the Health Services Manager, who was responsible for: ensuring all physicians & nurses followed policy & procedures; referring inmates to the appropriate off-site specialist/physicians if necessary; ordering medications that an off-site physician may have requested for inmates; and reviewing off-stie physicians recommended treatment plans and ensuring nurses & doctors followed such a plan when Also, Utter is responsible for ensuring that all physicians & nurses at WRC screened, tested, and treat an inmates' serious medical condition. Utter is being sued in her individual & official capacities.

## IV. EXHAUSTION OF REMEDIES

12. Plaintiff sought to exhaust his administrative remedies by filing grievances pursuant to Wisconsin Administrative Code 310 at WRC regarding the treatment there & at WRC. Plaintiff also filed numerous grievances at GBCi regarding the on-going Deliberate Indifference to his DVT condition. The Inmate Complaint Examiners at each respective institution dismissed his Complaints & the final authority(CCE) adopted the decision to dismiss.(Attached )

## V. FACTS

13. On October 23, 2019, Plaintiff starting experiencing pain in his right leg and on October 26, he wrote the Fox Lake Correctional Institution Health Services Unit(HSU) asking whether the medication he was on caused this side effect? HSU responded,'No".

14. On October 26, 2019, Plaintiff further complained about the pain in his right leg & requested an x-ray. HSU directed him to drink plenty of water.

15. On October 31,2019, Plaintiff went to HSU where Nurse R. Bergeman noted his right leg was swollen, discolored in the calf area up to the knee and thigh . Bergeman spoke to Dr. Krohn and medical notes say there was an order to check for 's/s infection."

16. On November 1, 2019, Plaintiff seen Nurse Sherri Palda and told her he was experiencing a 4 out of 10 pain in his right leg, no matter if he was standing or sitting. Palda observed what appeared to be a nickel sized 'bug bite' on Plaintiff's right leg where the tissue felt harder and slightly warmer. Palda added that this area felt like 'bumps' but not under the skin and there was tenderness. Nurse Palda noted that she'd order Ibuprofen.

17. Over a month later on December 4, 2019, in the same area Nurse Palda diagnosed as a 'bug bite', Plaintiff started experiencing major pain in his right leg that was moving up into his right thigh. Plaintiff described it to Fox Lake HSU staff as a hernia by his testicles.

18. On December 6, 2019, Plaintiff told a Psychological services staff about the pain in his leg and she documented it and said she'd tell HSU.

19. The next day, Plaintiff couldn't bear weight on his right leg and fell on his head while in his room at Fox Lake. Plaintiff went to the Agnesian Healthcare Hospital in Waupun where he told staff there that for the last 4-5 days the pain in his right leg had been getting worse.

20. On December 8, 2019, Dr. Kumar of the Agnesian Healthcare Hospital diagnosed Plaintiff with a "Deep vein thrombosis "(DVT) involving his popliteal & femoral veins and it was determined that it be treated with Eliquis(Apixaban) for six months and a NARCO(hydrocodone, .5mg-325mg, every 4 hours) for the pain. Dr. Kumar said that Plaintiff would have died from a blood clot traveling up his right leg if he hadn't come in on December 7. DVT is a condition in which a blood clot develops in the body's veins, can result in a pulmonary embolism ("PE") if the clot travels to the lungs.

21. Plaintiff was released from the Hospital on December 9, 2019, and complained about the pain in his right leg.

22. Medical Notes from December 10, 2019, indicate Plaintiff had been released from the Hospital for a DVT( deep venous thrombosis) in his right leg and he had requested something for the pain. The notes, in conflict with Dr. Kumar's orders, say the Hospital hadn't recommended a NARCO, which Plaintiff was asking for. Fox Lake HSU Staff Radovich refused to order the hydrocodone ordered by Dr. Kumar and Radovich didn't replace it with a pain medication equivalent to or on a par with it. Defendant Larson, contrary to Dr. Kumar's orders, stated that Ibuprofen was more than sufficient to deal with Plaintiff's type of pain.

23 During AM medication distribution on December 10, 2019, RN Nicki Shannon observed the limp in Plaintiff's walk when he got out the bed. Plaintiff again complained about the pain in his right leg and the ineffectiveness of Ibuprofen to deal with it.

24. Dr. Charles Larsen compounded Radovich's refusal to order the recommended pain med or equivalent by prescribing Ibuprofen on December 12 because this is a NSAID( Non Steroid Anti-Inflammatory Drug ) that interacted with the blood thinner medication(Eliquis) to worsen Plaintiff's serious medical blood clot condition. The danger of taking such NSAID meds like Ibuprofen was mentioned in the Eliquis Direction Sheet forwarded to Defendants Larsen & Radovich.

25. Plaintiff was transferred on December 16, 2019, to the Wisconsin Resource Center(WRC) and the John Doe WRC Doctor, noted that the Eliquis medication would continue for six months as recommended by the Agnesian Doctor on about December 7, 2019.

26. Plaintiff went to the Emergency Room(ER) on December 31, 2019, due to pain and swelling in his right leg. It was determined that Eliquis would continue. On January 2, 2020, Plaintiff met with Dr. Arboleda, whose treatment plan was a stocking for Plaintiff's right leg and Eliquis(Apixaban).

27. On January 27, 2020, Plaintiff went to the ER again due to pain and the Hospital noted that his DVT hadn't extended further up his right leg and Eliquis was continued. The next day, Plaintiff was referred to a Vascular Surgeon to determine further treatment.

28. Plaintiff met with a Vascular Surgeon on February 6, 2020, who recommended that he continue on Eliquis and follow up in 3 months.

29. On February 11, 2020, Dr. Choi of a pain clinic in Appleton started to administer cortisone shots for Plaintiff's back.

30. On February 21, 2020, Dr. Arboleda prescribed Lyrica(150mg, twice a day) as part of treatment for Plaintiff's pain. March 11 was the last time he seen Arboleda.

31. On May 2, 2020, Plaintiff visited Aurora health Center & the Patient Medical History says a 'gastric ulcer in January 1996".

31. On May 27, 2020, pursuant to Plaintiff's request for a second opinion of Dr. Arboleda's treatment plan, he saw Dr. Lee, who noted Plaintiff's chronic extensive DVT on his right leg during a venal gram. Dr. Lee told Plaintiff that his DVT was too far progressed due to scar tissue for him to offer an alternative treatment such as the implantation of an IVC filter, a medical device inserted into the IVC designed to prevent blood clots from traveling from the legs to the heart and lungs. Dr. Lee said successful surgery on his DVT could've occurred within the first six months of symptoms, which was in between October, 2019 to April 2020. However, Dr. Lee informed Plaintiff that he could remove the varicose veins in his right leg because these cause more pain to patients like him who have a DVT. Defendants Dr. Loria & WRC John Doe never considered Dr. Lee's offer to remove Plaintiff's varicose veins so he could be relived of the pain caused by their interaction with his DVT.

32. On June 13, 2020, Plaintiff wrote HSU at WRC and informed them that the lidocaine patches once a day were not helping.

33. At WRC on June 25, 2020, Dr. Loria increased Plaintiff's Lyrica doses to 150 mg twice a day while February 28 & December 23,2020 medical records confirm he was taking 150mg of Lyrica three times a day. Plaintiff would remain on this medication until about 3 weeks after he was transferred to Green Bay Correctional Institution(GBCI) on June 24,2021. GBCI took Plaintiff off Lyrica out the blue. A Medical Website says Lyrica is safe to take with blood thinners.

34. On October 28,2020, Plaintiff went to the Emergency Room yet again for the recurring problem with his DVT condition. The Hospital Medical Notes indicate Plaintiff had a recurrent DVT in view of severe symptoms and therefore, Apixaban(Eliquis) was discontinued and he was

transitioned to Warfarin after use of a bridging Lovenox shot. The Notes further said that because of coagulating(blood clotting) Lovenox was used until the Hospital got the Warfarin.

35. When Plaintiff was released from the Hospital, the Defendants WRC John Doe & Dr. Loria were provided with information from the treating doctor that: (a) Plaintiff's stomach ulcer in the past could cause complications Warfarin & (b) patients who cannot take or are not getting enough benefit from blood thinner medications, can get surgery or recieve an IVC Filter('inferior vena filter"), which is a medical device inserted into the IVC designed to prevent blood clots from traveling from the legs to the heart and lungs.

36. As a result of Plaintiff seeking a second opinion, HSU at WRC set up a telephone call with Oncologists & Hematologist Dr. Natasha C. Edwin on December 23, 2020. Dr. Edwin recommended that Plaintiff be taken off of all blood thinners(Eliquis, Warfarin) and only given 'baby' aspirin. Defendants WRC HSU Manager John Doe & Dr. Loria followed this recommendation although it was a complete 180' from that of Vascular Specialist in February & more importantly, Plaintiff had already been diagnosed with a chronic DVT by Dr. Lee that required a blood thinner.

35. When Plaintiff arrived at GBCI on or around June 24,2021, he hadn't been receiving any blood thinner meds for approximately 5 & half months due to Defendants Loria & John Doe following Dr. Dr. Edwin's second opinion. About 3 weeks later or around July 21, GBCI discontinued Plaintiff's Lyrica medication out the blue and didn't replace it with any equivalent medication to deal with his pain. As a result, Plaintiff endured the withdrawal effects of chills, routine defecating, vomiting, and body pains & aches.

36. Based on an ultrasound sometime in the end of June or beginning of July, Dr. Tondkar of GBCI HSU recommended Eliquis again. Defendant Dr. Lavoie in Madison, however, denied this request. Additionally, Dr. Tondkar opined that aspirin wasn't enough to deal with the pain and so Lyrica was recommended again but Defendant Lavoie also denied this.

37. In July, Plaintiff was put back on Warfarin with Defendants Utter & Dr. Lavoie's approval.

38. On September 5, 2021, Plaintiff went to the ER at Vincent Hospital in Green Bay because Medical Notes said he was sub-therapeutic on Warfarin and he'd be switched to Eliquis. The notes say the prison guards were notified and the prescription was sent to the GBCI HSU, where Defendant Utter is the Manager. Vincent Hospital also recommended that there be a follow up with a Cardiovascular specialist and 8 tablets of hydrocodone for the pain.

39. However, after Plaintiff's release from the Hospital on September 5, GBCI HSU manager Utter & Dr. Lavoie went against the Vincent Hospital Doctors' prescribed treatment plan by: (a) substituting the recommended Eliquis for Warfarin because Plaintiff alleges it was a cheaper route and (b) refusing to order the hydrocodone and caused Plaintiff to have to endure pain. In particular, a September 30, 2021, response from HSU Staff ays," Your order for

Apixaban(Eliquis) has been discontinued per ACP Order", which discontinuation is against Vincent Hospital Doctor's orders.

40. On October 5, 2021, Plaintiff went off site to see Vascular Specialist Dr. John Hutto at a Prevea Clinic. Dr. Hutto's notes say that Warfarin is only adequate if the INR(blood levels) are consistently in between the 2-3 range. Significantly, Dr. Hutto recommended that Plaintiff would benefit from a lifelong anticoagulation medication and stocking. Dr. Hutto specifically recommended that Plaintiff would benefit from a more aggressive pain regiment because his DVT in the right leg is associated with chronic pain syndrome.

41. On January 21, 2022, Plaintiff went to the ER again were his INR level was at 2.1 so he was switched back to the Eliquis from the Warfarin that Defendants Utter & Dr. Lavoie had substituted in September for allegedly financial reasons. Within a week of Plaintiff's release from the Hospital, these Defendants again disregarded the Hospital's recommendation that Plaintiff be put on Eliquis and switched him back to Warfarin.

42. Subsequently, Plaintiff went back to the ER on March 5, 2022, and Dr. Karla J. Roth at the Hospital wondered why GBCI HSU staff kept ignoring the Doctor's orders that he be given Eliquis and not Warfarin? Plaintiff alleged that Defendants Utter & Dr. Lavoie had substituted the requested Eliquis with Warfarin because the latter was cheaper.

43. Dr. Roth further noted that it appeared Plaintiff's clot was more extensive than it had been six weeks ago or on January 21. Dr. Roth noted that Hematology Specialist, Dr. Jaslowski, would be consulted for advice on the best way to anticoagulate Plaintiff in the long term because there was a probability of the DVT worsening despite Apixaban(Eliquis) therapy. Significantly, Dr. Jaslowski raised the question of whether plaintiff was at the point of having to be placed o Enoxaparin(Lovenox shot) chronically for his DVT? "We will see what the Hematology has to say". Plaintiff was prescribed for the first time a trial run of 150 mg of Proxada twice a day. This Proxada is a blood thinner like Eliquis & Warfarin. Another note said Plaintiff would be bridging to Lovenox at the Hospital only. Finally, the notes of Dr. Roth say Plaintiff was given a three day prescription tramadol(one pill, three times a day) & a low dose of gabapentin(100mg) for his 5-6 rated pain. Tramadol is for acute pain & more potent than Lyrica but GBCI followed this treatment plan.

44. Plaintiff filed an Inmate Grievance on March 25, 2022, regarding Defendant Wachnolz's recommendation that he consider Celebrex for his pain issues being complained of since July 2021. Wachnolz & Defendant Dr. Lavoie had met to discuss pain management & they determined that Plaintiff didn't need either Lyrica (Pregabalin) or Gabapentin for his pain despite his insistence that he get one of these. Defendant Wachnolz had told Plaintiff that the Celebrex would make his blood thinner than it already is and upon information and belief, Wachnolz had never consulted with a Vascular Specialist to determine any complications Celebrex would cause hiss DVT medication. Like Ibuprofen, Celebrex is a NSAID that can have an adverse effect on blood thinner medications(Proxada, Eliquis, Warfarin). Therefore, NSAIDs

shouldn't be prescribed without consulting the treating Vascular Specialist because it can put patients with Plaintiff's DVT condition at serious risk of dying. Defendants Wachnolz & Lavoie were not qualified to make such a medical professional decision.

45. Plaintiff's pain was effectively dealt with while taking Lyrica at WRC from February 2020 until his June 2021 transfer to GBCI and he is unaware of any complications to his DVT that Dr. Arboleda & Dr. Lee said this pain treatment could cause. In fact, a Medical Website says that Lyrica & Gabapentin, unlike Ibuprofen & Celebrex & other NSAID, are safe to take with blood thinner medications. Upon information & belief, Plaintiff asserts that several of his treating physicians during hospital visits prescribed Lyrica & Gabapentin because they didn't pose a danger when combined with his blood thinner medications. In March of 2022, Defendants Utter, Wachnolz & Lavoie denied Plaintiff Pregabalin(Lyrica) & Gabapentin because these weren't an option. Whereas, these same Defendants were willing to give Plaintiff Gabapentin & the more potent Tramadol upon his release from the Hospital on January 21,2022, and allowed him to have Lyrica when he first arrived at GBCI in June 2021. Upon information & belief, Plaintiff asserts that several of his treating physicians during hospital visits prescribed Lyrica & Gabapentin because they didn't pose a danger when combined with his blood thinner medications.

46. On May 4, 2022, Plaintiff went to the ER again & an ultrasound indicated that there was no DVT in his right leg. However, Plaintiff, upon information & belief, asserts that this May 4 ultrasound was inaccurate because:(a) he had already been diagnosed with chronic DVT; (b) Dr. Jason Le told him that the scar tissue in his DVT was permanent, & (c) On August 18, 2022, Plaintiff went to the ER again and Dr. Hutto noted that his DVT was similar to the one seen back in March. The May 4, visit resulted in Plaintiff being continued on Proxada.

47. On August 18, 2022, Plaintiff went to the ER again and Dr. Hutto noted that his DVT was similar to the one seen back in March. One capsule of 75 mg of Pregabalin(Lyrica) for 30 days was prescribed by Dr. Hutto for Plaintiff's pain.

48. On August 20, 2022, Plaintiff wrote a Health Services Request(HSR) asking about 50 mg of Lyrica that Dr. Alina Sora authorized for 30 days?

49. On September 15, 2022, Defendant Wachnolz informed Plaintiff about the Oxcarbazepine he'd be given for pain. Before this med was finally given to Plaintiff, he had went almost the entire time at GBCI(June 2021) without the proper pain medication like Lyrica, which is the most effective & non threatening to his DVT medications per Vascular Specialist & even Dr. Toondkar of GBCI.

50. On October 24, 2022, Plaintiff went to Vincent Hospital and just as Doctors Roth & Jaswloski suspected, Plaintiff would need a Lovenox shot for the rest of his life to deal with his chronic DVT.

## VI. LEGAL CAUSE

51. Plaintiff alleges that Defendants Dr. Larsen & Radovich showed Deliberate Indifference to his DVT condition & pain, in violation of his 8th Amendment Right, when they interfered with the treatment plan prescribed by the Agnesian Hospital Doctor by substituting the recommended hydrocodone (or an equivalent) for Ibuprofen because: (a) in between December 10 to his transfer from FCLI on December 16,2019, the Ibuprofen was ineffective in dealing with the pain caused by his DVT & (b) The danger of mixing this NSAID medication with Plaintiff's blood thinner medication(Eliquis) was part of the Eliquis Direction Sheet included in the Agnesian Hospital Release Treatment Plan/Chart forwarded to Defendants Larsen & Radovich. By substituting Ibuprofen for hydrocodone and/or equivalent pain medication, Defendants Dr. Loria & WRC HUS Manager John Doe put Plaintiff's life in danger because Ibuprofen could have interacted with his blood thinner medication(Eliquis) and worsened his DVT.

52. Plaintiff's medical file included information that: his DVT symptoms had been misdiagnosed in October 2019 as a bug bite; Dr. Arboleda in February 2020 had even placed him on Eliquis(blood thinner) for 3 months; Dr. Lee had diagnosed a chronic DVT May 27,2020; and he had a gastric ulcer in the past & continual blood clotting while on blood thinners.

Therefore, Plaintiff alleges that in light of Defendants Dr. Loria & WRC HSU Manager John Doe, being aware of all the information in his medical file, showed Deliberate Indifference to his DVT condition, in violation of his 8th Amendment Right, when they: (a) delayed his request for a second opinion of Dr. Arboleda's February recommendation of Eliquis & a stocking because by the time Plaintiff seen Dr. Lee in May 2021, the latter said it was too late to do surgery because he was passed the 6 month window & the scarring was too severe;(b) failed to consider the treatment Dr. Lee offered on May 27, 2020, which was to remove Plaintiff's varicose veins so he could be relieved of the pain caused by these varicose veins interaction with his DVT; (c) failed to conduct their own inquiry of Plaintiff's eligibility for surgery e.g. IVC ; and (d) followed a second opinion by Dr. Edwin on December 23, 2020, that Plaintiff didn't need any blood thinners or pain medication but only 'baby' aspirin, which was contrary to the more qualified Cardiovascular Dr. Lee's diagnosis of a chronic DVT that at minimum called for a blood thinner.

Plaintiff's DVT condition worsened to the extent that it causes constant pain & he now is required to have the painful lifelong Lovenox shots that cause bruises & lumps in his thighs & stomach as a result of the abovementioned Deliberate Indifference of Defendants Dr. Loria & WRC HUS Manager John Doe.

Whereas, either the varicose vein surgery or the installment of the IVC filter that Plaintiff was eligible for in light of his continual blood clotting while on blood thinners & gastric ulcer in the past, would have eliminated the unnecessary pain Plaintiff will be experiencing for the rest of his life.

53. Plaintiff alleges that Defendants Utter, Dr. Lavoie, & Wachnolz were aware from his medical file that: (a) an October 29, 2020, Health Care Providers printout regarding Warfarin said Plaintiff was required & did tell his Health Care provider that in the past he had a gastric ulcer(1996) because this medication may have an adverse effect, which Plaintiff alleges is why doctors routinely kept putting him back on Eliquis when he went to the ER( Sept. 5,2021, January 21 & March 5, 2022); (b) Plaintiff was still forming blood clots when they kept switching him from the Eliquis prescribed at the treating Hospital to the Warfarin everytime he was released from the Hospital; (c) Plaintiff he had been taking either Gabapentin and/or Lyrica for his pain management at WRC from February 2020 until his arrival at GBCI in June 2021; (d) Dr. Hutto recommended on January 5,2021, that Plaintiff would benefit from a lifelong anticoagulation medication and stocking for his DVT & a more aggressive pain regiment because his DVT in the right leg is associated with chronic pain syndrome: (d) Dr. Hutto had prescribed Lyrica to deal with the pain associated with Plaintiff's DVT because this pain medication was not a NSAID that could combine with his blood thinner medication & worsen his DVT; and (e)Plaintiff was still forming blood clots when they kept switching him from the Eliquis prescribed at the treating Hospital to the Warfarin everytime he was released from the Hospital.

Therefore, Plaintiff alleges that in light of Defendants Dr. Lavoie , Utter, & Wachnolz being aware of all the above mentioned information in his medical file, they showed Deliberate Indifference to his DVT condition, in violation of his 8th Amendment Right, by: (a) refusing to follow Dr. Tokart's recommendations, based on an ultrasound in June /July 2021, that Plaintiff's DVT be treated with Eliquis & his pain with Lyrica ; (b) refusing to follow the more qualified treatment plan of Cardiovascular Specialist(Dr. Hutto) that Plaintiff stay on Eliquis & be given hydrocodone for pain and he'd benefit from a more aggressive pain regiment eg Lyrica; and (c) switching him, primarily due to cost, from the Eliquis prescribed at the treating Hospital to the Warfarin everytime he was released from the Hospital, which exacerbated his DVT since he would go to the ER on several occasions.

As a result of these Defendants Deliberate Indifference, Plaintiff endured pain in between his arrival at GBCI in June 2021 until September 2022 , and their Unconstitutional actions combined with those of Defendants Dr. Loria & WRC John Doe, supra, to exacerbate his DVT condition even further, as verified by several trips back to the Hospital( Sept. 5,2021, January 21 & March 4, 2022), his DVT extending up his leg(Jan. 21), and now having to inject the painful Lovenox shots, which cause bruises & lumps in his thighs & stomach for the rest of his life.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

54. Compensatory damages in the amount of $ 5,000,000 against each Defendant, jointly & severally,

55. Punitive damages in the amount of $ 1,000,000 against each Defendant.

56. A Jury Trial on all triable issues by jury.

57. Plaintiff's costs in the suit and any additional costs this Court deems just, proper, and equitable.

DATED THIS 21st DAY OF NOVEMBER 2022

JAIMIE E. STRASSER# 301293

GREEN BAY CORRECTIONAL INSTITUTION

VERIFICATION

I have read the foregoing Complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information & belif, and, as to those, I believe them to be true. I certify under penalty of perjury & pursuant to 28 USC @ 1746, that the foregoing is true & correct.

Executed this 21st DAY OF November ~~DECEMBER~~ 2022 in Green Bay, Wisconsin.

(signature)